**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PRINCE HOTEL, S.A.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 11-0537-WS-M** |
| | ) | |
| **BLAKE MARINE GROUP, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on four overlapping Motions to Dismiss (docs. 19, 20, 22, 23) filed by defendants, Eli Zatezalo and Blake Marine Group. The Motions have been briefed and are now ripe for disposition.

**I. Relevant Background.**

***A. The Complaint.***

On September 16, 2011, plaintiff, Prince Hotel, S.A., filed a Complaint (doc. 1) in this District Court against defendants, Blake Marine Group, Inc. and Eli Zatezalo. On its face, the Complaint predicates federal jurisdiction on 28 U.S.C. § 1332, with Prince seeking damages in excess of $75,000 and alleging complete diversity of citizenship between plaintiff and defendants.

The underlying factual allegations are straightforward. Prince alleges that it operates a hotel in Port au Prince, Haiti, and that it contracted to provide accommodations at that facility to Blake Marine employees from February 25, 2010 through May 22, 2010. (Doc. 1, ¶¶ 4, 9, 11.) According to the Complaint, defendant Zatezalo (the President of defendant Blake Marine) provided Prince with a Blake Marine check that he had written in the amount of $62,359.60 drawn on First National Bank of Baldwin County in Fairhope, Alabama, in payment for lodging services on or about April 21, 2010. (*Id.*, ¶ 12.) The Complaint alleges that this check was returned for "not sufficient funds (NSF)," but that defendants failed and refused to make alternate payment arrangements or even to discuss the matter with Prince. (*Id.*, ¶¶ 12-13.)

Plaintiff's final bill to defendants included the $62,359.60 returned check, as well as invoices for $7,137.50 and $1,080. (*Id.*, ¶ 13.) Defendants never paid a dime of these obligations, and apparently never made any effort to do so, aside from passing the worthless check signed by Zatezalo on a Blake Marine bank account in Alabama.

Based on these allegations, Prince brings claims against defendants for misrepresentation and fraud based on violation of Alabama § 34-15-19 (obtaining food, lodging or other accommodations by fraud or misrepresentation), and for violation of Alabama Code § 6-5-285 (right of action for holder of worthless check, draft or order to recover "such damages, both punitive and compensatory, including a reasonable attorney fee, as the jury or court trying the case may assess"). The Complaint claims as damages the $62,359.60 amount of the worthless check, plus the sums of $7,137.50 and $1,080.00 for the other invoices (as set forth in Prince's final bill), as well as unspecified punitive damages, attorney's fees and costs. (*Id.* at 12.)

***B. The Prior Lawsuit.***

Significantly, this case is not the first time that Prince has sued Blake Marine and Zatezalo in this District Court over this hotel bill and worthless check. On August 6, 2010, Prince filed suit against these same defendants based on the same incident. The suit was styled *Prince Hotel, SA v. Blake Marine Group, Inc. and Eli Zatezalo*, Civil Action 10-0424-WS-M (the "Prior Lawsuit"). In that complaint, however, Prince did not assert that there was complete diversity of citizenship, nor did it otherwise invoke the provisions of 28 U.S.C. § 1332. Instead, the lone jurisdictional allegation in the Prior Lawsuit was that "[t]his complaint arises under ATCA [Alien Tort Claims Act]. The jurisdiction of this court is founded on federal question jurisdiction." (Civil No. 10-424, doc. 1, ¶ 2.) This Court *sua sponte* raised the question of subject-matter jurisdiction and, after briefing, found that § 1331 "does not supply subject matter jurisdiction over this action." *See Prince Hotel, SA v. Blake Marine Group*, 2010 WL 5279975, *3 (S.D. Ala. Dec. 16, 2010). On that basis, the Court dismissed the Prior Lawsuit without prejudice for lack of jurisdiction. This Court did not consider or decide whether diversity jurisdiction would have been proper, for the simple reason that Prince never raised it.

Prince appealed. On appeal, it argued for the first time that this Court should have found diversity jurisdiction over the Prior Lawsuit pursuant to § 1332. The Eleventh Circuit summarily rejected this argument without addressing its merits, as follows: "Prince Hotel states that although it did not request the District Court to exercise subject matter jurisdiction pursuant to 28

U.S.C. § 1332, the facts presented in the complaint clearly indicated the same. … Neither Prince Hotel's complaint nor its brief to the district court – specifically addressing subject-matter jurisdiction – mentioned § 1332 or diversity jurisdiction. Accordingly, we decline to address the issue." *Prince Hotel, SA v. Blake Marine Group*, 2011 WL 2623562, *1 n.2 (11th Cir. July 1, 2011). The appeals court affirmed the dismissal of the Prior Lawsuit for lack of subject-matter jurisdiction, finding that the Alien Tort Statute, 28 U.S.C. § 1350, had no application to Prince's claims and that federal question jurisdiction did not lie. Two and a half months after the Eleventh Circuit affirmed the dismissal without prejudice of the Prior Lawsuit, Prince filed the Complaint in this action, this time grounding jurisdiction on the diversity provisions of § 1332.

***C. Service of Process.***

When the Complaint was filed in this case, the Court promptly issued its standard Service Order (doc. 2). The Service Order provided, *inter alia*, that "[i]f within forty-five (45) days after the filing of the Complaint, Plaintiff has not effected service …, Plaintiff shall file with the Court a notice describing the action taken by Plaintiff to effect service and the result thereof." (Doc. 2, at 1.) That 45-day period passed without Prince filing the required notice.[1]

Nonetheless, plaintiff was not idle as to service of process. To the contrary, Prince made arrangements with the U.S. Marshals Service to serve the Summons and Complaint on Blake Marine and Zatezalo, at their addresses on file with the Alabama Secretary of State.[2] On December 6, 2011, however, the Marshals Service filed a "Process Receipt and Return" (doc. 15) reflecting the following: (i) Blake Marine was no longer at the address given; (ii) the Marshals Service was unable to locate Zatezalo; and (iii) persons interviewed by the Marshals Service in

---

[1] Defendants now mischaracterize the terms and import of the Service Order. Specifically, defendants assert that the Service Order imposed an absolute deadline of November 3, 2011 for completion of service. (Doc. 21, at 1-2 (repeatedly referencing a "November 3 service deadline"); doc. 30, at 1 (discussing "the initial November 3, 2011 deadline to complete service of process").) It did no such thing. Nothing in the Service Order required service of process within 45 days or in any way altered, diminished or truncated the Rule 4(m) 120-day window for service of process. Insofar as November 3, 2011 was a deadline at all, it was merely a deadline for plaintiff to report on the status of service, not to complete service.

[2] On September 16, 2011, plaintiff also mailed and emailed copies of the Complaint to the attorney who had represented Blake Marine and Zatezalo in the Prior Lawsuit, and who also represents them here. (Doc. 29, Exh. 2.) Defense counsel did not accept service of process on defendants' behalf, nor was he under any obligation to do so.

that neighborhood indicated that Blake Marine and Zatezalo "had moved to an unknown location in Louisiana." (Doc. 15, at 4.) The Marshals Service did not furnish Prince with any further information as to defendants' whereabouts, and apparently did not learn anything more in its investigation.

The next day after learning that the Marshals Service had been unable to serve process on defendants, Prince's counsel established contact with and retained a private process server in Baton Rouge, Louisiana to attempt to serve defendants there. (Doc. 29, Exh. 6.)[3] That process server advised plaintiff's counsel on January 18, 2012 that it had located an address for Blake Marine in Harvey, Louisiana; that Blake Marine had a registered agent for service in Louisiana; and that Zatezalo appeared to have an office at the Blake Marine facility but he had not been served because a secretary was "covering for him." (Doc. 29, Exh. 7.)

Coincidentally, on January 18, 2012, the undersigned entered a Show Cause Order (doc. 16) concerning service of process. In particular, the January 18 Order reflected that the 120-day time limit for service provided by Rule 4(m), Fed.R.Civ.P., had expired,[4] and directed plaintiff to show cause why this action should not be dismissed without prejudice pursuant to Rule 4(m). Plaintiff filed a timely response (doc. 17) to the Show Cause Order, stating that defendants had been served and attaching proofs of service. Those proofs stated that Blake Marine had been served on January 20, 2012, when a private process server delivered the summons and complaint to "Agent for service, E. Carol Rogers" in New Orleans, Louisiana; and that Zatezalo had been served on that same date by personal service "at Blake Marine, 2230 Peters Rd., Harvey, LA 70058." (Doc. 17, at 4, 6.)

On February 8, 2012, defendants filed "Special Appearances," by and through counsel, along with a combined total of four Motions to Dismiss.

---

[3] Plaintiff's counsel also contacted defendants' counsel on December 6, 2011 and requested that he provide defendants' current addresses. (Doc. 29, Exh. 5.) Defendants' counsel did not comply. Again, he was under no legal obligation to do so.

[4] The Rule 4(m) deadline expired 120 days after the filing of the Complaint, or on January 17, 2012. As a technical matter, the 120th day fell on Saturday, January 14, 2012, and Monday, January 16 was a legal holiday (Martin Luther King, Jr.'s Birthday). As such, excluding the weekend days and legal holiday from the "last day" calculus by operation of Rule 6(a)(1)(C), Fed.R.Civ.P., the Rule 4(m) period continued to run until Tuesday, January 17.

## II. Analysis.

Defendants' Motions to Dismiss raise a host of arguments – some colorable, some not – in support of their contention that this action should be dismissed. In particular, defendants assert that dismissal is warranted because (i) plaintiff failed to complete service of process in a timely manner; (ii) defendant Blake Marine was not properly served; (iii) personal jurisdiction is lacking as to defendant Zatezalo; (iv) the amount in controversy requirement of 28 U.S.C. § 1332 is not satisfied, such that there is no subject-matter jurisdiction; (v) dismissal is appropriate on a *collateral estoppel* theory; and (vi) dismissal on the merits is appropriate under Rule 41. Each of these arguments will be addressed in turn.

### *A. Timeliness of Service of Process.*

For starters, defendants assert that dismissal is warranted under Rule 4(m), Fed.R.Civ.P., because Prince did not complete service of process within 120 days. This argument has superficial appeal, given that Prince commenced this litigation on September 16, 2011, and served defendants on January 20, 2012, 126 days later. Nonetheless, a closer look reveals the infirmities in defendants' position.

It is true that, as a general matter, "[a] plaintiff is responsible for serving the defendant with a summons and the complaint within the time allowed under Rule 4(m)." *Lepone-Dempsey v. Carroll County Com'rs*, 476 F.3d 1277, 1280-81 (11th Cir. 2007). It is also true that Rule 4(m) contemplates service being perfected within 120 days. *See* Rule 4(m), Fed.R.Civ.P. ("If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). But nothing in Rule 4(m) <u>mandates</u> dismissal if a plaintiff misses the 120-day deadline. Rather, "Rule 4(m) provides for dismissal if service is not achieved within 120 days, absent either (a) good cause for a plaintiff's dilatory service or (b) a decision by the Court to exercise its discretion in favor of extending the time for service without a showing of good cause." *PNCEF, LLC v. Hendricks Building Supply, LLC*, 2010 WL 1856291, *1 (S.D. Ala. Apr. 29, 2010). Importantly, "Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause." *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1286 (11th Cir. 2009) (citation omitted). Thus, even where good cause is lacking, "the district court must still consider whether any other circumstances warrant an extension of time based on the facts of the

case." *Id.* (citation omitted). Relevant circumstances may include, for example, such factors as whether the statute of limitations would bar a refiled action, whether the defendant evaded or concealed a defect in service, and whether the defendant had actual notice of the suit. *See Lepone-Dempsey*, 476 F.3d at 1282; *PNCEF*, 2010 WL 1856291, at *3.

Assuming (without deciding) that Prince has not shown good cause for failing to perfect service of process within 120 days, the Court readily finds that the attendant facts and circumstances favor an extension. First, the record shows that Prince acted with reasonable diligence to serve the defendants by making service arrangements with the U.S. Marshals Service and with a private process server in Louisiana well within the 120-day period. So this is not a case in which the plaintiff simply shirked his service obligation until it was too late. Second, plaintiff's difficulty in serving defendants was at least partially attributable to defendants' own acts, inasmuch as (a) defendants moved out of Alabama shortly before the filing of the Complaint, (b) Blake Marine apparently failed to update its address (or that of its registered agent, Zatezalo) with the Alabama Secretary of State, and (c) defendants' counsel declined to cooperate with plaintiff's requests as to defendants' whereabouts.[5] Third, defendants learned of the existence of this lawsuit promptly, when plaintiff's counsel forwarded a copy of the Complaint to defendants' attorney the day after it was filed, such that defendants cannot claim any unfair surprise by the delay in service. Fourth, plaintiff actually perfected service just three business days after the 120-day deadline expired, and no prejudice could possibly have accrued to defendants in the interim.[6] Fifth, the fact remains that defendants have now been served with process and this matter is ready to move forward. To dismiss the case based on

---

5 By so noting, the Court does not insinuate that defendants' counsel was under any legal, professional or moral obligation to cooperate in this fashion. Rather, the point is simply that had defendants' counsel extended such a courtesy to his counterpart, plaintiff would in all likelihood have completed service long before the 120-day period expired.

6 Remarkably, defendants assert that they were "prejudiced by the delay" because they "moved to Louisiana prior to filing of this action and prior to attempted service." (Docs. 19 & 20, ¶ 2.) Such an argument approaches frivolity. Blake Marine and Zatezalo are obviously no worse off in this litigation by virtue of having been served on January 20, 2012 (the actual date of service) than they would have been were they served on January 17, 2012 (the Rule 4(m) deadline), particularly when they have known about the pendency of the Complaint since the inception of this action.

plaintiff's overshooting of the Rule 4(m) deadline by a mere three days, when defendants have not been prejudiced and the Court is vested with discretion to extend the deadline, would contravene the "strong policy of determining cases on their merits." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).

For all of these reasons, the Court in its discretion **extends** the time for service of process on defendants through and including January 20, 2012. Because defendants were actually served on that date, service is deemed timely. The Motion to Dismiss is **denied** insofar as it is predicated on allegations of noncompliance with Rule 4(m).

***B. Whether Service was Proper as to Defendant Blake Marine.***

Next, defendants argue that dismissal of the Complaint as to Blake Marine is warranted because Prince failed to serve process on it in a manner authorized by Louisiana law. To support this contention, defendants show that attorney E. Carroll Rogers of New Orleans, Louisiana is Blake Marine's registered agent in Louisiana; that Rogers' registered address for service is her law office located at 701 Poydras Street, Suite 400, New Orleans, LA 70139; and that rather than personally serving Rogers with the Summons and Complaint, plaintiff's process server left those items with Rogers' receptionist at that address. (*See* Rogers Aff. (doc. 21-2), ¶¶ 2, 5-7.) Defendants further show that Louisiana law requires both delivery to the registered agent and mailing to the defendant itself, but that no such mailing was ever done in this case.

This theory for dismissal of the Complaint against Blake Marine is not compelling. As an initial matter, movants' contention (with no citation to authority) that service on Blake Marine is not valid unless it comports with Louisiana law is incorrect. *See* Rule 4(e)(1), Fed.R.Civ.P. (service of process in federal court is achieved by "following state law for serving a summons in an action brought in courts of general jurisdiction ***in the state where the district court is located*** or where service is made") (emphasis added).[7] In recognition of the clear terms of Rule 4(e)(1), plaintiff maintains that service as to Blake Marine was proper under Alabama law, not Louisiana law. (Doc. 29, at 7.) Yet defendants do not respond to this argument, and do not provide any

---

[7] *See also Webster Industries, Inc. v. Northwood Doors, Inc.*, 244 F. Supp.2d 998, 1005-06 (N.D. Iowa 2003) (observing that Rule 4(e) "makes the state law of *either* of two jurisdictions equally applicable," and that "if service is valid under the rules of one qualifying state, the court need not consider the law of the other qualifying state").

showing or analysis as to whether Blake Marine was properly served under Alabama law. This Court will not develop movants' arguments for them.

Moreover, defendants gloss over plaintiff's contention that service of process on Blake Marine was properly performed by and through service on Zatezalo, who is Blake Marine's registered agent for service of process in Alabama (doc. 29, Exh. 1) and (by defendants' own admission) the president of Blake Marine (doc. 21, at 3). Under federal law, a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Rule 4(h)(1)(B), Fed.R.Civ.P. And Alabama law allows service of process on a domestic corporation by "serving an officer …, a managing or general agent, or any agent authorized by appointment or by law to receive service of process." Rule 4(c)(6), Ala.R.Civ.P. Missing from defendants' analysis is any rebuttal of plaintiff's contention that service of process on Zatezelo (the mechanics of which defendants have not contested) was sufficient under Alabama law to serve Blake Marine. Again, this Court declines to fill in the blanks.

Finally, the Court observes that Blake Marine's challenge to service of process is unfair and inequitable in light of its own failure to adhere to its obligations under Alabama law vis a vis maintaining a registered agent. The Complaint alleges (and defendants have not disputed) that Blake Marine was incorporated in the State of Alabama. (Doc. 1, ¶ 3.) Likewise, record evidence shows that Blake Marine is regarded as a domestic corporation by the Alabama Secretary of State. (Doc. 29, Exh. 1.) It is an Alabama corporation. Alabama law requires domestic corporations to "designate and continuously maintain in this state … a registered agent; and … a registered office." Ala. Code § 10A-1-5.31(a). It likewise requires notice to the Alabama Secretary of State when the registered agent's address changes. *See* Ala. Code § 10A-1-5.33. Yet plaintiff's evidence shows that, to this day, Blake Marine lists Zatezalo as its registered agent in Alabama, with an address of 5990 Rutherford Lane, Fairhope, AL 36532. (Doc. 29, Exh. 1.) In other words, when Blake Marine and Zatezalo packed up and left Alabama, they did not update their registered agent's address with the Alabama Secretary of State as required by law. Blake Marine's Motion to Dismiss is, in this respect, an attempt to

parlay its own noncompliance with Alabama law into an unfair obstacle to service of process by Prince. Movants make no showing that such a maneuver is proper under Alabama law.[8]

For all of these reasons, defendants' Motion to Dismiss is **denied** insofar as they contend that service of process was not valid as to defendant Blake Marine.

***C. Personal Jurisdiction and Defendant Zatezalo.***

As the next ground for their Motion to Dismiss, defendants assert that personal jurisdiction is lacking as to defendant Zatezalo because he changed his residence from Alabama to Louisiana in August 2011, shortly before the Complaint was filed.

"When a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp.2d 1056, 1060 (S.D. Ala. 2007) (citations omitted); *see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (similar). In Alabama, this inquiry collapses into a single question because Alabama's long-arm statute permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause. *See Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) ("the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible"); *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) ("Alabama's long-arm statute permits service of process as broad as the permissible limits of due process.") (citation and internal quotation marks omitted). Accordingly, the critical question is whether the exercise of personal jurisdiction over defendant Zatezalo comports with constitutional safeguards.

[8] To state the point differently, Blake Marine (an Alabama corporation) was obliged by Alabama statute to keep Alabama authorities apprised of the registered agent and registered office for service in Alabama. When Blake Marine relocated to Louisiana, and Zatezalo moved away from the Rutherford Lane address provided to the Secretary of State, it appears that neither Blake Marine nor Zatezalo updated that information. Through such omission, defendants exacerbated Prince's difficulty in serving Blake Marine, because that entity's duly registered agent for service in Alabama is now nowhere to be found in Alabama, and the address on file with the Secretary of State is no good. To grant Blake Marine's Motion to Dismiss in these circumstances would be to reward it for inequitable conduct.

Due process authorizes the exercise of personal jurisdiction when "(1) the nonresident defendant has purposefully established minimum contacts with the forum" and "(2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997); *see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (similar). The minimum contacts analysis varies depending on whether the type of jurisdiction asserted is general or specific. In that regard, facts supporting personal jurisdiction "may be general, which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002).

Prince contends that personal jurisdiction is proper as to Zatezalo on a specific jurisdiction theory. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (citation and internal quotation marks omitted). Specific jurisdiction is properly found where (i) the defendant's contacts with the forum state are related or give rise to the plaintiff's cause of action, (ii) the contacts involve some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum, and (iii) the defendant's contacts with the forum are such that he should reasonably anticipate being haled into court there. *See, e.g., Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-21 (11th Cir. 2009); *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005).

Defendants insist that this lawsuit has "nothing to do with [Zatezalo's] previous residence in Alabama." (Doc. 21, at 11.) That is incorrect. The facts before the Court are that, during the time that Zatezalo was admittedly domiciled in Alabama, he was president of Blake Marine, an Alabama corporation; that Blake Marine's business was headquartered in Alabama; that, in performing his Blake Marine duties, he wrote a check payable to Prince drawn on a Blake Marine account at the First National Bank of Baldwin County in Fairhope, Alabama; and that he ignored Prince's many faxes and telephone calls to him in Alabama seeking payment of the hotel bill. In other words, Prince is suing Zatezalo for Zatezalo's conduct as an Alabama resident running an Alabama company, passing an allegedly fraudulent check drawn on an Alabama bank, and rebuffing correspondence to him in Alabama about the dishonored check. On these factual allegations, the Court readily concludes that Zatezalo's contacts with Alabama are related

or give rise to Prince's causes of action, that Zatezalo purposefully availed himself of the privilege of conducting activities in Alabama, and that his contacts are such that he reasonably should anticipate being haled into court in Alabama.[9]

Of course, as a general proposition, the minimum contacts a defendant has purposefully established with the forum "must be evaluated in light of other factors to ensure that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Oldfield*, 558 F.3d at 1221 (citation and internal quotation marks omitted). However, "[t]he presence of minimum contacts raises a presumption that the court may constitutionally exercise jurisdiction," which presumption may only be rebutted where the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1221 n.29 (citation omitted). Defendants have come forward with no such considerations here. Simply put, there appears to be nothing remotely unfair or unjust about requiring Zatezalo to defend against Prince's claims in federal court in Alabama. Accordingly, the Court readily finds that the exercise of jurisdiction over Zatezalo in Alabama in this matter would comport with traditional notions of fair play and substantial justice.

The Motion to Dismiss is **denied** insofar as it is grounded on allegations that this Court lacks personal jurisdiction over defendant Zatezalo.

---

[9] Defendants' arguments to the contrary are not persuasive. For example, defendants state in conclusory terms that "there is not a substantial connection with this forum." (Doc. 21, at 11.) How so? This case is, in large part, about an allegedly fraudulent check written by a then-Alabama resident on behalf of an Alabama company drawn on an Alabama bank; and is also about that then-Alabama resident's silence when the plaintiff repeatedly tried to contact him in Alabama to remedy the NSF check. Defendants' contention that "Alabama should have little interest" (doc. 21, at 11) in this dispute is inaccurate for these very same reasons. And defendants' suggestion that Zatezalo's contacts with Alabama are the result of the "acts of third parties" (*id.*) is likewise porous. Zatezalo established his residence in Alabama. He headquartered his business in Alabama. Zatezalo's contacts with Alabama giving rise to this lawsuit are contacts that he purposefully created. They are not random, fortuitous, or the result of acts of other persons or entities. *See generally Oldfield*, 558 F.3d at 1223 ("by purposefully making contacts within the forum that were necessarily related to or gave rise to the fraudulent activity, the defendant could reasonably foresee that it would cause harm within the forum"). Finally, defendants' suggestion that Zatezalo's activities of relevance to this lawsuit did not occur in the forum state appears inaccurate, given the plain allegations of the Complaint that, among other things, Zatezalo disregarded communications directed to him at his business address in Alabama by Prince concerning the worthless check and the hotel charges at issue.

***D. Presence or Absence of Diversity Jurisdiction.***

As their fourth ground for seeking dismissal of the Complaint, defendants challenge the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332. In particular, defendants' position is that, even though the Complaint specifically alleges that the amount in controversy exceeds $75,000, this minimum monetary threshold is not satisfied.

Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). Defendants do not argue (and could not reasonably be heard to argue) that complete diversity of citizenship is lacking; rather, their Motion focuses exclusively on the amount-in-controversy requirement.

The most glaring flaw in defendants' reasoning is their failure to recognize – much less attempt to satisfy – the stringent legal test governing their challenge. It is black-letter law that "[a] diversity suit should not be dismissed unless it is apparent, to a legal certainty, that the plaintiff cannot recover the requisite amount in controversy." *Deen v. Egleston*, 597 F.3d 1223, 1228 (11th Cir. 2010) (citations and internal marks omitted); *see also Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805 (11th Cir. 2003) ("Generally, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.") (citation and internal marks omitted); *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("Dismissal of a case brought under 28 U.S.C. § 1332 is proper where the pleadings make it clear to a legal certainty that the claim is really for less than the jurisdictional amount.") (citation and internal marks omitted).

From the pleadings, it is not apparent to a legal certainty that Prince will be unable to recover $75,000, exclusive of interest and costs, in this case. By the clear terms of the Complaint, Prince seeks recovery of the $62,359.60 face value of the check that was returned for insufficient funds, plus two other invoices in the respective amounts of $7,137.50 and $1,080, plus punitive damages. It cannot seriously be contended that punitive damages are unavailable for the kinds of intentional tort claims asserted in the Complaint. *See, e.g.*, Ala. Code § 6-5-285 ("The holder of a worthless check, draft, or order for the payment of money shall have a right of

action against the person who unlawfully made, uttered or delivered the same to him ….. The plaintiff in such action may recover such damages, ***both punitive and compensatory***, … as the jury or court trying the case may assess.") (emphasis added); *Third Generation, Inc. v. Wilson*, 668 So.2d 518, 521 (Ala. 1995) ("A jury may award punitive damages in a fraud action if the plaintiff makes a sufficient evidentiary showing that he has been injured as a result of the fraud and that the defendant's conduct warrants punishment."). Given that plaintiff seeks compensatory damages exceeding $70,000 plus punitive damages (which appear to be legally available), the Court cannot say to a legal certainty that the amount in controversy is below $75,000. As such, defendants' Motion to Dismiss for lack of subject-matter jurisdiction under 28 U.S.C. § 1332 is **denied**.[10]

---

[10] Defendants' subarguments on the amount-in-controversy point are meritless. First, defendants maintain that Prince cannot show fraud, reasoning that Alabama's criminal worthless checks statute, Ala. Code § 13A-9-13.1, does not apply because "Plaintiff does not allege that payment was refused for lack of funds." (Doc. 21, at 13.) This is false. The Complaint specifically alleges that Blake Marine's $62,359.60 check was "returned less than ten (10) days later indicating not sufficient funds (NSF)," that "[t]his check was returned to Prince Hotel marked Not Sufficient Funds (NSF)," and that "check 1278 in the amount of $62,359.6062 [*sic*] … was returned for not sufficient funds." (Doc. 1, at 4, 5, 11.) Given the clarity of these allegations, defendants' contention that no such allegations exist defies rational explanation. The Court understands that defendants' position is that the check was not refused for insufficient funds, but was rather the subject of a "stop payment" order; however, this factual dispute cannot and will not be resolved in defendants' favor at this juncture. *See, e.g., Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."). Second, defendants assert that plaintiff has not alleged fraud with particularity, but "merely alleges failure to perform a promised act arising from contract." (Doc. 21, at 14.) Again, defendants proceed from a false premise. The Complaint does not merely allege that defendants failed to pay their hotel bill; to the contrary, it alleges that they negotiated a worthless check in payment for that obligation, and that such check was returned for insufficient funds, which as a matter of Alabama statute is *prima facie* evidence that defendants intended, knew or expected that the instrument would not be honored (*i.e.*, that they engaged in fraud). *See* Ala. Code § 13A-9-13.1(b)(2) (it is *prima facie* evidence that a maker intended, knew or expected the instrument to be dishonored where "[p]ayment was refused by the drawee for lack of funds"); § 34-15-19 (proof that a person paid for lodging "with a check or draft on which check or draft payment was refused on due presentation … shall be *prima facie* evidence of the fraud or mispresentation, or intent to deceive or defraud"). Third, movants' criticism that the Complaint does not quantify the punitive damages sought is likewise unavailing. A plaintiff is not required to claim a specific punitive damages amount; rather, for § 1332 purposes, courts are free to use their experience and (Continued)

***E. Collateral Estoppel.***

As their fifth ground for dismissal, defendants insist that plaintiff's claims are precluded by principles of collateral estoppel. In that regard, defendants rely on the Prior Lawsuit, and specifically Prince's request in that case that the Eleventh Circuit find diversity jurisdiction, even though plaintiff had never asserted that basis for subject-matter jurisdiction at the district court level. The appeals court did not determine that there was or was not § 1332 jurisdiction; instead, it simply "decline[d] to address the issue." *Prince Hotel, SA v. Blake Marine Group*, 2011 WL 2623562, *1 n.2 (11th Cir. July 1, 2011).

Defendants' argument misapprehends the nature of this doctrine. Collateral estoppel, or issue preclusion, may "prevent the relitigation of particular issues which were actually litigated and decided in a prior suit." *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990). "To successfully invoke collateral estoppel, a party must demonstrate that: (1) the issue at stake in a pending action is identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003) (citation omitted); *see also Ex parte Flexible Products Co.*, 915 So.2d 34, 45 (Ala. 2005) (collateral estoppel requires three elements: "(1) The issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior action; and (3) the resolution of the issue must have been necessary to the prior judgment.") (citations omitted). No court in the Prior Lawsuit decided whether there was or was not diversity jurisdiction because Prince never raised it before the District Court. The issue was simply never

---

common sense to evaluate the reasonable range of such awards. *See generally Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (in evaluating amount in controversy, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements," and may also rely on "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings") (citation and internal quotation marks omitted). It is not at all unreasonable to think that sufficient punitive damages may be awarded in this case that, when combined with the amount of compensatory damages at issue, would satisfy the $75,000 statutory amount-in-controversy threshold.

resolved or determined, one way or the other. Because the availability of § 1332 jurisdiction was never decided in the Prior Litigation (which was dismissed without prejudice), collateral estoppel in no way bars Prince from bringing this action predicated on diversity jurisdiction. *See McDaniel v. Harleysville Mut. Ins. Co.*, --- So.3d ----, 2011 WL 5110210, *1 (Ala.Civ.App. Oct. 28, 2011) (defining collateral estoppel as an "affirmative defense barring a party from ***relitigating an issue determined against that party in an earlier action***") (emphasis added and citation omitted); *Bonner v. Lyons, Pipes & Cook, P.C.*, 26 So.3d 1115, 1121 (Ala. 2009) ("Collateral estoppel is an equitable defense that bars a party from relitigating an issue ***that has been resolved in an earlier case***.") (emphasis added).

The Motion to Dismiss on grounds of collateral estoppel is **denied**.[11]

***F. Rule 41 Issues.***

Finally, as a supplement to their original Motions to Dismiss, defendants ask the Court to dismiss plaintiff's claims against them with prejudice pursuant to Rule 41(b), Fed.R.Civ.P.[12]

---

[11] Defendants' reliance on *Abele v. Tolbert*, 2007 WL 2050908 (11th Cir. July 18, 2007), is misplaced. In *Abele*, the district court made a specific finding in the previous litigation "that there was no violation of Abele's right to procedural due process." *Id.* at *1. That finding was affirmed on appeal, with the Eleventh Circuit concluding that "Abele's right to procedural due process was not violated." *Id.* Abele then brought a second lawsuit alleging, among other things, that the defendants had violated his procedural due process rights based on the same underlying transactions and occurrences. The Eleventh Circuit found collateral estoppel, reasoning that "[w]hether Abele's right to procedural due process was violated when the Winter Street property was demolished was actually litigated in the Hernando County action and decided against Abele by both this Court and the district court." *Id.* at *3. By contrast, the issue of whether there is or is not diversity jurisdiction over the claims between Prince and Blake Marine / Zatezalo was never decided adversely to anyone in the Prior Lawsuit. Thus, *Abele* is plainly distinguishable on its face.

[12] The apparent motivation of defendants in invoking Rule 41(b) in their supplemental Motions is to circumvent the reality that dismissal for the previously stated grounds would be without prejudice, rather than with prejudice. For example, the Eleventh Circuit has stated in the clearest of terms that any dismissal for noncompliance with Rule 4(m) must be without prejudice. *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1342 n.5 (11th Cir. 2005) ("Rule 4(m) authorizes a district court to dismiss only *without prejudice* for failure to serve process"); *see also Marcus v. Postmaster General, U.S. Postal Service Southeast Area*, 2011 WL 5119539, *2 (11th Cir. Oct. 29, 2011) (where complaint was dismissed for failure timely to achieve service of process, "the court lacked the authority to dismiss the complaint with prejudice"). So defendants are evidently seeking to use Rule 41(b) to accomplish an end-run around principles favoring dismissal without prejudice in these kinds of circumstances. In so (Continued)

That rule authorizes dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Rule 41(b), Fed.R.Civ.P.

As grounds for invoking Rule 41(b), defendants first maintain that "Plaintiff failed to serve the complaint within the deadlines provided by this Court." (Doc. 22, 23, at ¶ 3.)[13] This is not correct. The Court did not establish deadlines for service of process, above and beyond those imposed by the Federal Rules of Civil Procedure. To be sure, Prince failed to file a routine status report as to service within 45 days after filing the Complaint, and in that sense did not strictly comply with court orders; however, such a relatively innocuous (and, frankly, not uncommon) omission does not rationally support the draconian sanction of dismissal, much less dismissal with prejudice. As for the other violations of rules, the foregoing Order establishes this Court's determination that Prince did not violate Rule 4(m), did not fail to serve process on defendant Blake Marine in accordance with Rule 4, did not initiate suit against defendant Zatezalo without personal jurisdiction, and did not prejudice defendants in any way, shape or form. Besides, Rule 41(b) expressly affords district court the discretion in all cases to find that a dismissal under that rule does not operate as an adjudication on the merits. *See* Rule 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) … operates as an adjudication on the merits.").

For all of these reasons, defendants' Rule 41 Motions to Dismiss (docs. 22, 23) are **denied** because (i) Rule 41(b) has no application here because Prince has not ignored court orders without excuse, and (ii) even if it had, the Court would exercise its discretion not to

---

doing, defendants overlook Rule 41(b)'s language that dismissals for "lack of jurisdiction" (which would apply to three or more grounds identified in defendants' initial Rule 12(b) Motions) are not adjudications on the merits. *See, e.g., New Jersey Institute of Technology v. Medjet, Inc.*, 2002 WL 31175476, *3 (Fed. Cir. Oct. 1, 2002) ("[F]or purposes of Rule 41, jurisdiction is very broadly construed to include any reason for dismissal that is more of a pre-condition than a consideration of the merits – even if the technical basis for dismissal was for failure to state a claim.").

[13] This appears to be the driving force of defendants' argument, as they state elsewhere that "Rule 41 dismissals are … routinely upheld where the party ignored court orders without excuse." (Doc. 30, at 3.) This case simply does not fit within that paradigm. Prince has not ignored court orders without excuse.

dismiss Prince's Complaint with prejudice based on the pedestrian deficiencies alleged by defendants and the obvious lack of prejudice to defendants arising from same.

**III. Conclusion.**

For all of the foregoing reasons, defendants' Motions to Dismiss (docs. 19, 20, 22 & 23) are all **denied** in their entirety. Defendants are **ordered** to file answers to the Complaint on or before **March 27, 2012**.

DONE and ORDERED this 13th day of March, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE