IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PRINCE HOTEL, S.A., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 11-0537-WS-M |
| | ) |
| BLAKE MARINE GROUP, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

    This matter comes before the Court on Plaintiff's Motion for Summary Judgment (doc. 40), Defendants' Motion to Strike (doc. 46), Plaintiff's Motion to Strike (doc. 50), and Defendants' Motion for Summary Judgment (doc. 56).[1] The Motions have been briefed and are now ripe for disposition.

**I.    Relevant Background.[2]**

    On January 12, 2010, Haiti was struck by a devastating earthquake. Evidently, defendants traveled to Haiti shortly thereafter to participate in the massive relief effort. Weeks later, on February 25, 2010, an agreement was executed in Port au Prince by Prince Hotel and Blake Marine Group. (Doc. 40, at Attachment B.) This document was signed by Marise Chancy

---

[1]     Paragraph 13(c) of the Rule 16(b) Scheduling Order provides that "[i]f a party's exhibits in support of or in opposition to a motion exceed 50 pages in the aggregate, then that party must deliver a courtesy hard copy of those exhibits to the Judge's chambers by mail or hand delivery." (Doc. 44, ¶ 13(c).) Despite filing hundreds of pages of exhibits, plaintiff has provided no courtesy copies. Notwithstanding plaintiff's failure to adhere to this requirement, the Court in its discretion will consider the summary judgment filings in their present posture, without delaying resolution to allow for submission of the requisite courtesy copies.

[2]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, with respect to each motion for summary judgment, the nonmovant's evidence is taken as true and all justifiable inferences are drawn in that party's favor.

on behalf of Prince Hotel and by Eli Zatezalo on behalf of Blake Marine Group.[3]  As memorialized in the February 25 Agreement, the terms of the parties' arrangement were simple, to-wit: (i) Prince Hotel agreed to rent 9 rooms to Blake Marine Group at $900 per day on a weekly basis, payable in advance, effective immediately, with payment being non-refundable and excluding meals; (ii) Prince Hotel "guaranteed" two meals per day for a fee; (iii) the parties understood that "under the best circumstances, we project to be able to provide 10 to 15 hours of electricity per night;"[4] (iv) a structural team had evaluated the Hotel and authorized it to resume operations, despite "minor repairs in progress;" and (v) Prince Hotel indicated it would "try [its] best" to deliver laundry within 24 hours, but that "we can guarantee 48 hours turnaround."  (*Id.*)  The February 25 Agreement also included a handwritten notation stating, "No additional rooms to be rented someone else without BMG being given first right of refusal."  (*Id.*)[5]

---

[3] There can be no question that both signatories were executing the agreement in a representative capacity on behalf of their respective entities.  After all, the signature block for Chancy included the words "Prince Hotel" and that for Zatezalo included the words "Blake Marine Group" written underneath.  Moreover, the text of the agreement begins, "We want to confirm the rental terms discussed between our resident manager … **and the Blake Marine Group**."  (Doc. 40, Att. B (emphasis added).)

[4] Defendants' characterization of this language as meaning that "Prince Hotel guaranteed at least 15 hours of electricity per day" (doc. 45-1, at ¶ 13) is counterfactual to the point of recklessness.

[5] In their Motion to Strike (doc. 46), defendants urge the Court to strike all of plaintiffs' summary judgment exhibits (presumably including the February 25 Agreement) because they have not been authenticated.  This objection is misplaced.  Even unauthenticated or otherwise inadmissible evidence is properly considered on summary judgment so long as it can be reduced to admissible form at trial.  *See, e.g., Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (on summary judgment, courts consider "evidence which can be reduced to an admissible form"); *Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1223 (S.D. Ala. 2008) ("The general rule in this Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial.") (citations omitted); Rule 56(c)(2), Fed.R.Civ.P. (explaining that proper objection is that "a fact cannot be presented in a form that would be admissible in evidence").  Thus, whether plaintiff's exhibits are or are not admissible as presently submitted is of no moment.  Because defendants have made no showing that these exhibits cannot be reduced to admissible form at trial (and all appearances are to the contrary), their authentication objection is misguided and their Motion to Strike on that basis is **denied**.  Of course, it remains each party's burden at trial to present its evidence in admissible form.

From this straightforward contract, a lengthy, expensive legal dispute spanning two countries, two lawsuits, and more than two years ensued. Plaintiffs' records show that Zatezalo and Blake Marine Group incurred room charges at Prince Hotel (apparently, both for rooms they occupied and for rooms that Prince Hotel held for them, regardless of usage) on an ongoing basis in the months of February, March, April and May 2010. (Doc. 40-2, at 15-25; doc. 50, at Attachments B through Z and ZZ.)[6] For whatever reason, Blake Marine Group did not comply with the February 25 Agreement's condition that the nine-room weekly rental rate was "payable in advance," nor did Prince Hotel enforce that provision. The result was that, as of April 2010, Blake Marine Group had amassed considerable unpaid lodging and meal charges at Prince Hotel.[7]

On April 6, 2010, a representative of Prince Hotel sent an e-mail to Zatezalo, stating in relevant part as follows: "Sorry to bother you but we need our funds. … When can we expect the wire transfer. … Also remember more bills are accumulating What am i supposed to do? Please help us lcear this situation." (Doc. 50, Att. N.) On that same date, Zatezalo (writing from an email address emz@blakemarinegroup.com) responded to Prince Hotel as follows: "I am trying to clear this mess up – I promise you. … I would like for you to stop holding the additional rooms / keep mine for now. As stated, I signed the contract and will pay alone if I

---

[6] That said, plaintiff has presented its business records in an incomprehensibly confusing and jumbled manner. For example, many entries and records are reproduced multiple times in plaintiff's summary judgment exhibits. Certain records are for periods pre-dating the February 25 Agreement. And plaintiffs have failed to present any meaningful road map as to what charges were accrued, during what periods of time, whether and when rooms were actually occupied by Blake Marine Group, whether and when they were simply held open and unused, and whether, when, if and how such charges were paid. (The summary chart at Exhibit ZZ to Document 40 is a somewhat helpful start, but it is plagued by insufficient information, inclusion of extraneous information, and lack of explanatory verbiage.) Plaintiff should not assume that the sufficiency of this evidence on summary judgment equates to a likelihood that it will be helpful in its current configuration in advancing plaintiff's case at trial.

[7] For example, on March 24, 2010, Prince Hotel sent an e-mail to the addresses "khooks@blakemarinegroup.com" and "emz@blakemarinegroup.com" stating that their account was "seriously overdue" in the amount of $46,997.60, and that "I will appreciate if the wire transfer can be made to our account today." (Doc. 50, Att. J.) The request appears to have fallen on deaf ears, as no wire transfer payment was made by Blake Marine Group at that time. Yet Prince Hotel continued to rent and/or hold rooms for Blake Marine Group for more than two months thereafter.

have to. … It is only fair that you are paid according to our contract." (*Id.*) Zatezalo's e-mail of April 6, 2010 did not quarrel with any of Prince Hotel's charges; to the contrary, it reflected his express understanding that the outstanding charges included bills for "the block of rooms when they were not present" (*i.e.*, for unused rooms that Prince Hotel held for Blake Marine). (*Id.*) Far from protesting this arrangement, Zatezalo acquiesced to and ratified it, assuring Prince Hotel in the April 6 correspondence that "I signed the contract and I am responsible for it but [others in his group] seem to think it is not fair." (*Id.*)

On April 20, 2010, Zatezalo signed a check made payable to Prince Hotel in the amount of $62,359.60. The payor was listed as "Blake Marine Group, Inc.," and the check was drawn on an account at the First National Bank of Baldwin County in Fairhope, Alabama. (Doc. 40, Att. E.) The dollar amount listed on that check corresponds exactly to the $62,359.60 that Prince Hotel's ledger shows was due and owing for Blake Marine Group's unpaid lodging and food/beverage accounts as of that date. (Doc. 50, Exh. ZZ.) Had the check cleared and the payment gone through, all would have been right in the matter of Prince Hotel, Blake Marine Group and Eli Zatezalo, and the protracted legal dispute in which the parties have been mired for more than two years never would have happened.

Instead, what happened next was that on April 30, 2010, Prince Hotel received notification from its bank that Blake Marine Group's $62,359.60 check had been returned, and Prince Hotel's account had been debited in the full amount of such check, for "Reason NSF," an abbreviation commonly understood to mean "Not Sufficient Funds." (Doc. 40, Att. A-3.) Not surprisingly, Prince Hotel followed up with Blake Marine Group via letter dated May 13, 2010, indicating as follows: "The Check was received on April 20, 2010 and deposited April 21, 2010 into our Account. Less than Ten (10) days later the check was returned for not sufficient funds (NSF). We do hope that this is a mistake that can be corrected as soon as possible by a money order sent to us via DHL or FEDEX." (Doc. 50, Att. O.) By all appearances, Zatezalo and Blake Marine Group ignored and were otherwise unresponsive to the May 13 letter. There is no indication, for example, that they expressed either remorse or willingness to set things right with Prince Hotel after their check bounced.

On June 1, 2010, Prince Hotel followed up again with a letter to Zatezalo and Blake Marine Group, pointing out the "complete silence from your company" despite faxes and phone calls by Prince Hotel. (Doc. 40, Att. G.) On that basis, Prince Hotel indicated in the June 1 letter

-4-

that it was canceling the agreement with Blake Marine Group, clearing room #28 which it had been holding for Blake Marine Group, and invoicing Blake Marine Group for the original $62,359.60 from the returned check, plus two additional invoices in the amounts of $7,137.50 and $1,080.00,[8] for a total outstanding amount of $70,577.10.  (*Id.*)  There is no evidence that Blake Marine Group ever paid all or any portion of this bill, or that it even attempted to make arrangements to do so or to engage in meaningful dialogue with Prince Hotel about the large unpaid invoices.[9]

Left with no other recourse, Prince Hotel took Blake Marine Group and Zatezalo to court.  In the instant lawsuit, Prince Hotel brings a pair of state-law claims against Blake Marine Group and Zatezalo.  The first cause of action recited in the Complaint (doc. 1) sounds in misrepresentation and fraud predicated on violation of "Alabama Civil Code [*sic*] Section 34-15-19 Obtaining Accommodations by Fraud or Misrepresentation."  (Doc. 1, at 5.)  Prince Hotel's second claim is for violation of "Alabama Civil Code [*sic*] Section 6-5-285," which affords the

---

[8]     The invoice for $7,137.10 appears to cover weekly room charges of $840.00 for the period of April 11, 2010 through May 22, 2010; additional room charges for the period of April 20-23 for a "Mr. Smith" ($360.00) and a "Sec Agent" ($300.00) and food and beverage charges of $1,236.00 for the week for April 18-24 and $201.50 for the period of April 20-23 for the "Mr. Smith" room.  (Doc. 50, Att. X.)  Meanwhile, the $1,080 invoice covers charges for the period of May 23 through May 31, apparently at a nightly rate of $120.  (Doc. 50, Att. Y.)  To the extent that these charges relate to a room being held for Zatezalo, it appears that Prince Hotel was simply following his express instructions in the April 6 correspondence to "keep mine for now."  (Doc. 50, Att. N.)

[9]     Such stonewalling is frankly difficult to understand, particularly in light of Zatezalo's present representation under penalty of perjury that "Blake Group was always willing to pay for its actual usage of rooms, and still is, upon proof of accurate accounting and documentation of room usage."  (Doc. 45-1, at ¶ 10.)  Such protestations of willingness to pay at least the undisputed portion of the charge are extraordinarily hard to reconcile with the record evidence that, after passing a check for the full amount owed that was returned for insufficient funds, defendants simply ignored Prince Hotel's efforts to collect payment.  And defendants' newfound quibbling with the amount of the bill appears incompatible with Zatezalo's admissions in the April 6 e-mail, his instructions to the Hotel to keep holding his room for him, and his subsequent act of providing a (worthless) check in the full amount of the bill.

holder of a worthless check a right of action to recover damages. (*Id.* at 8.) Plaintiff seeks compensatory and punitive damages, plus attorney's fees and costs.[10]

Now both sides seek summary judgment. Defendants assert that they are entitled to Rule 56 relief because (i) the proper defendant is "Blake Group LLC," which is not a party to this dispute, and the time for amending pleadings has expired; and (ii) Zatezalo can have no personal liability here because he was agent for a disclosed principal and made no personal guaranty on the subject debt. (*See* doc. 56.) For its part, plaintiff requests entry of summary judgment on the theory that the record establishes all legal elements of both of its causes of action herein. Each side opposes the other's Rule 56 motion, and both motions are now ripe.

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-*

---

[10] Plaintiff contended that federal subject-matter jurisdiction was conferred by 28 U.S.C. § 1332, inasmuch as the parties are of diverse citizenship and the amount in controversy exceeds $75,000. Defendants challenged that assertion via Rule 12(b)(1) motion; however, on March 13, 2012, the Court entered an Order (doc. 31) setting forth the legal and factual grounds for its conclusion that diversity jurisdiction has properly been invoked by Prince Hotel. In a nutshell, there is obviously complete diversity of citizenship between plaintiff and defendants. As for amount in controversy, plaintiff claims compensatory damages of $70,577.10, plus punitive damages, such that it certainly is not apparent to a legal certainty that Prince Hotel cannot recover the requisite amount in controversy. The Court remains convinced that federal jurisdiction properly lies here.

*Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The law is clear that "[t]he applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment." *Page v. Winn-Dixie Montgomery, Inc.*, 702 F. Supp.2d 1334, 1345 (S.D. Ala. 2010) (citations omitted); *see also Murray v. Holiday Isle, LLC*, 620 F. Supp.2d 1302, 1307 (S.D. Ala. 2009) (same). The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted); *see also Wermager v. Cormorant Tp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983) ("the filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits"). Nonetheless, "cross-motions may be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the dispositive legal theories and material facts." *Page*, 702 F. Supp.2d at 1345 (citations omitted); *see also Murray*, 620 F. Supp.2d at 1307.

**III.    Analysis.**

    *A.    Defendants' Motion for Summary Judgment.*

Defendants move for summary judgment on two stated grounds. As to Blake Marine Group, defendants' position is that Blake Group LLC is the proper defendant, yet plaintiff never amended its pleadings to name that entity. As to Zatezalo, defendants assert that he cannot be liable because was an agent for a disclosed principal and made no personal guaranty. Neither contention withstands scrutiny for Rule 56 purposes.

In an affidavit dated May 3, 2012, Zatezalo averred that the disputed hotel charges related to a "transaction and account … between Prince Hotel and 'The Blake Group.'" (Doc. 45-1, ¶ 2.) "The Blake Group, LLC" is an Alabama limited liability company, of which Blake Marine Group, Inc. is a member. (Doc. 56, Exh. A.) Alabama Secretary of State records show, and all parties appear to agree, that The Blake Group, LLC ("Blake LLC") is a distinct legal entity from Blake Marine Group, Inc. ("Blake Marine"). In their Rule 56 Motion, defendants reason that,

because Blake LLC and Blake Marine are separate entities, because the disputed charges are between Prince Hotel and Blake LLC, and because plaintiff has named only Blake Marine (and not Blake LLC) as a defendant, Blake Marine should be dismissed from this action as a matter of law.

The trouble with this argument is that defendants selectively focus on record evidence that supports their position while ignoring considerable contrary evidence. The February 25, 2010 agreement for hotel services was, on its face, entered into between Prince Hotel and Blake Marine, not Blake LLC. Correspondence relating to the unpaid charges was between Prince Hotel and various e-mail addresses at the "blakemarinegroup.com" domain. The April 20 check submitted by Zatezalo to Prince Hotel was drawn on an account in the name of Blake Marine, not Blake LLC. These facts unquestionably give rise to a reasonable inference that Blake Marine engaged in fraud and misrepresentation to obtain lodging services (as alleged in Count One of the Complaint), and that Blake Marine made, uttered or delivered the worthless check to Prince Hotel (as alleged in Count Two of the Complaint). In short, the record contains more than enough evidence from which a reasonable fact finder could conclude that the entity engaging in fraud and uttering a worthless check was Blake Marine, not Blake LLC, and that Blake Marine was doing so not to satisfy the debts of Blake LLC, but rather to satisfy its own debts pursuant to its own contract with Prince Hotel. Given the considerable record evidence linking Blake Marine to the tort and statutory claims alleged by Prince Hotel Herein, defendants' self-serving assertions that Blake LLC is the "Defendant real party in interest" do not entitle Blake Marine to a summary judgment ruling that excuses it from further participation or liability herein.[11]

---

[11] In so ruling, the Court recognizes that various invoices and statements prepared by Prince Hotel reference the customer/client as being "The Blake Group." (*See, e.g.*, Doc. 50, Atts. U, V, ZZ.) It is unclear why Prince Hotel invoiced Blake LLC for a contract it entered into with Blake Marine. On defendants' Motion for Summary Judgment, however, the Court cannot credit those exhibits showing a relationship between Prince Hotel and Blake Group, and discredit those other exhibits showing a relationship between Prince Hotel and Blake Marine, merely because movants would prefer it. Such ambiguity creates a fact question for trial that the Court cannot resolve in the manner most favorable to a summary judgment movant. More fundamentally, it is not at all clear why it matters which entity was named on the Prince Hotel invoices. After all, Prince Hotel's claims are not that the invoices went unpaid, *per se*, but rather that defendants engaged in fraud/misrepresentation and passed a worthless check. The acts of alleged fraud and the utterance of the worthless check appear to have been done by Blake Marine, not Blake LLC. Again, the April 20 check was not drawn on a Blake LLC account, but (Continued)

With respect to Zatezalo, defendants' Rule 56 Motion endeavors to jam a square peg into a round hole. The cornerstone of Zatezalo's argument for summary judgment is that "he was acting as an agent for a disclosed principal" and that, as a matter of well-settled law, "[a]n agent for disclosed principals is not liable on a contract which it binds for those principals." (Doc. 56-2, at 2.) Zatezalo also points to uncontroverted evidence that he did not provide a personal guaranty for Blake Marine's payment, and cites the Alabama Uniform Commercial Code provision which states that, "If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument." Ala. Code § 7-3-402(b)(1).

All of this might be well and good if Prince Hotel were suing Zatezalo for breach of contract or liability on an instrument. But the Complaint clearly specifies that Prince Hotel is not proceeding against Zatezalo on those theories. Instead, Prince Hotel has brought a cause of action against Zatezalo for fraud/misrepresentation, apparently based on Zatezalo's own acts such as the April 6 e-mail and the April 20 check. If Zatezalo committed that tort, it makes no difference whether he did so in a representative capacity or not. Either way, he would remain liable for his own tortious conduct. *See, e.g., Ex parte McInnis*, 820 So.2d 795, 798-99 (Ala. 2001) ("A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort.").[12] Likewise, Prince Hotel asserts a statutory claim

---

was instead drawn on a Blake Marine account. So it is far from obvious to the undersigned why Blake LLC would be a proper defendant, and why Blake Marine would not, for the particular claims and causes of action interposed herein.

[12]   *See also Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala. 1986) ("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."); *Galactic Employer Services, Inc. v. McDorman*, 880 So.2d 434, 437 n.2 (Ala.Civ.App. 2003) ("An individual is personally liable for all torts which that individual committed, notwithstanding the person may have acted as an agent or under directions of another. … [I]f a corporate officer participates in the wrongful conduct, or knowingly approves the conduct, the officer, as well as the corporation, is liable for the penalties.") (citation omitted); *Ex parte Jamar*, 703 So.2d 879, 882 n.1 (Ala. 1996) (See, J., concurring) ("[W]hether he is acting on his own behalf or for another, an agent who violates a duty which he owes to a third person is answerable to the injured party for the consequences. … In accordance with these principles, an agent or other employee, has been held liable to a third person for his own negligence.") (citation omitted). This line of authorities, and Zatezalo's (Continued)

against Zatezalo for violation of Alabama's Civil Worthless Check Act, which creates a right of action for the holder of a worthless check "against the person who unlawfully made, uttered or delivered the same to him." Ala. Code § 6-5-285. Zatezalo presents neither argument nor authority that his acts of signing the Blake Marine check and delivering said check to Prince Hotel place him outside the scope of persons who may be held liable under § 6-5-285. This Court will not endeavor to research, develop and formulate such arguments on his behalf.[13]

For all of the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 56) is **denied**.

### B. *Plaintiff's Motion for Summary Judgment.*

Prince Hotel has filed a Rule 56 Motion of its own. The stated basis for that Motion is that "there are no triable issues of material fact supporting misrepresentation and fraud based on violation of Alabama Section 34-15-19 … and for violation of Alabama Code Section 6-5-285." (Doc. 40, at 1-2.) Plaintiff's Motion both oversimplifies the record evidence and omits discussion of crucial elements of its claims that Prince Hotel bears the burden of proving at trial.

#### 1. *Fraud Cause of Action.*

Plaintiff's misrepresentation/fraud cause of action expressly relies on Alabama Code § 34-15-19. That statute provides, in relevant part, as follows: "Proof that food, lodging, or other accommodation was obtained by false pretense … or that such person gave in payment, or in part payment, for such food, lodging, or other accommodation any check or draft on which check or draft payment was refused on due presentation … shall be *prima facie* evidence of the fraud or

---

direct participation in the alleged fraud, renders it unnecessary to examine plaintiff's hypothesis that Zatezalo may be liable on a theory of piercing the corporate veil.

[13] *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *M.R. v. Board of School Com'rs of Mobile County*, 2012 WL 3778283, *4 n.5 (S.D. Ala. Aug. 30, 2012) ("Federal courts do not develop parties' legal arguments for them."); *Stabler v. Florida Van Lines, Inc.*, 2012 WL 32660, *7 n.16 (S.D. Ala. Jan. 16, 2012) ("Of course, the undersigned will not speculate or guess as to facts outside the record, and cannot fill in the blanks in the record with explanations never provided, in order to resolve the Rule 56 Motion in movant's favor."); *York v. Day Transfer Co.*, 525 F. Supp.2d 289, 301 n.10 (D.R.I. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted).

misrepresentation, or intent to deceive or defraud, mentioned in Sections 13A-8-10 through 13A-8-10.3." Ala. Code § 34-15-19.  Plaintiff insists that all it must prove to establish a § 34-15-19 violation are "(1) proof that a person paid for lodging with a check or a draft; and (2) check or draft was refused on due presentation."  (Doc. 40, at 15.)

As a threshold matter, it is not at all clear that § 34-15-19 has any application in the civil context.  Again, the plain language of the statute provides that proof that a person paid for lodging with a check refused on due presentation is *prima facie* evidence of fraud/ misrepresentation for purposes of §§ 13A-8-10 through 13A-8-10.3.  Significantly, Alabama Code §§ 13A-8-10 through 13A-8-10.3 are <u>criminal</u> statutes that delineate the Alabama crime of theft of services.  Of course, this is not a criminal action, and neither Blake Marine nor Zatezalo has been charged with or is otherwise being prosecuted for the Alabama crime of theft of services.  Nothing in those statutes suggests that they have any bearing on civil proceedings for fraud or misrepresentation.  Certainly, plaintiff has presented no authorities importing § 34-15-19 principles to a civil fraud/misrepresentation action.  Simply put, plaintiff has offered neither argument nor case law explaining why the rule in § 34-15-19 (*i.e.*, that paying for lodging via a check that is refused on due presentation is *prima facie* evidence of fraud where the crime of theft of services is charged) has any application whatsoever in civil litigation.

Even assuming that Prince Hotel were correct on that point (*i.e.*, that payment for lodging with a check that is subsequently refused is *prima facie* evidence of fraud or misrepresentation in a civil action), it still would not be entitled to summary judgment on this claim.  The statute is not couched in terms of conclusive presumption, but only "*prima facie* evidence."  So, at most, Prince Hotel has made a *prima facie* showing of fraud or misrepresentation, as opposed to one that is conclusive or irrebuttable.  Defendants have presented contrary evidence to rebut that *prima facie* showing; indeed, Zatezalo expressly "denies that there was ever any intent to deceive Prince Hotel" in connection with the April 20 check payment.  (Doc. 45-1, ¶ 17.)[14]  Defendants

---

[14] In its Motion to Strike, Prince Hotel urges the Court to strike Zatezelo's affidavit "because it is directly contradicted by admission of party opponent and documentary evidence." (Doc. 50, at 1.)  However, the existence of a contradiction between a party's affidavit and his prior statement, without more, does not trigger the very narrow "sham affidavit" rule invoked by Prince Hotel.  Under this rule, "A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (Continued)

further rely on evidence that Prince Hotel knew when the check was provided to it that Blake Marine and Zatezalo disputed the total charges and "expected an adjustment and further discussions" concerning same. (*Id.*)[15] This evidence that defendants harbored no intent to deceive Prince Hotel, that no fraudulent misrepresentation was made, and that there was no

---

(11th Cir. 2010). Applicable precedent plainly "requires the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." *Hillery v. Allstate Indem. Co.*, 705 F. Supp.2d 1343, 1346 (S.D. Ala. 2010) (citations omitted). Here, Prince Hotel identifies no inconsistency between Zatezalo's affidavit and any deposition or other sworn testimony he may have given, but instead seeks to expand the doctrine to embrace a discrepancy between an affidavit and a prior e-mail message or other unsworn document. The "sham affidavit" rule is not broad enough to reach these circumstances. *See, e.g., Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007) (noting that rule is "applied sparingly because of the harsh effect it may have on a party's case") (citation and internal marks omitted); *Akins v. Fulton County, Ga.*, 2008 WL 2130748, *3 (11th Cir. May 22, 2008) ("We apply the sham affidavit concept to limited circumstances, and thus, every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence.") (citation and internal marks omitted). For these reasons, plaintiff's Motion to Strike is **denied**.

[15]     Defendants' evidence on this point is suspect. If defendants disputed the total charges and wanted an adjustment, then why did they provide Prince Hotel with a check for the full amount demanded by Prince Hotel, if not to defraud or mislead it? If defendants "expected … further discussions," then why did they apparently ignore all of Prince Hotel's communications after the check was returned for insufficient funds? Surely, if defendants really had "expected an adjustment and further discussions" with Prince Hotel concerning the outstanding bill for lodging and hospitality services, they would have undertaken some communication / negotiation / accommodation of the matter above and beyond simply handing over a check that bounced and that was for an amount higher than they believed they owed. Notwithstanding these observations, the Court is constrained not to choose between competing inferences, make credibility determinations, or select inferences that are most favorable to the summary judgment movant. *See, e.g., Strickland v. Norfolk Southern Ry. Co.*, --- F.3d ----, 2012 WL 3640999, *1 (11th Cir. Aug. 27, 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.") (citation omitted). This is so even where the nonmovant's testimony is uncorroborated or self-serving. *See id.* at *7 ("Our case law recognizes that, even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment."). Thus, while they appear implausible, defendants' factual assertions rooted in Zatezalo's testimony must be – and will be – accepted as true for purposes of plaintiff's Motion for Summary Judgment. And that evidence gives rise to genuine issues of disputed material fact that must await resolution at trial.

detrimental reliance by Prince Hotel (an element of the claim that plaintiff's summary judgment filings do not even address), gives rise to genuine issues of disputed material fact as to whether plaintiff can prevail at trial on its claims that defendants engaged in fraud in providing the April 20 worthless check.[16] Accordingly, plaintiff is not entitled to summary judgment on this claim.

### 2.     *Civil Worthless Check Act Cause of Action.*

Plaintiff's other cause of action sounds under Alabama Code § 6-5-285, which provides in pertinent part as follows: "The holder of a worthless check, draft, or order for the payment of money shall have a right of action against the person who unlawfully made, uttered or delivered the same to him or to his endorser; and such action may be maintained though there has been no prosecution, conviction, or acquittal of the defendant for his unlawful act." Ala. Code § 6-5-285. In such an action, the plaintiff may recover "such damages, both punitive and compensatory, including a reasonable attorney fee, as the jury or court trying the case may assess." *Id.*

To make out a claim under § 6-5-285, "a plaintiff must prove three elements: (1) that the defendant drew the check, (2) with intent to defraud, (3) knowing that the check would not be honored." *Langford v. Merrill Lynch Futures, Inc.*, 470 So.2d 1180, 1183 (Ala. 1985); *see also Smith v. Southeastern Financial Corp.*, 337 So.2d 330, 333 (Ala. 1976) ("in order to present a claim under the Civil Worthless Check Act, the plaintiff must allege that the defendant drew the check, had the intent to defraud, and knew that the check would not be honored"); *Whitney Nat'l Bank v. Safety Guide of Alabama, LLC*, 2008 WL 5045065, *8 (M.D. Ala. Nov. 21, 2008)

---

[16]     To formalize this point in terms of the elements of the claim, under Alabama law, "To establish a cause of action for fraudulent misrepresentation, the plaintiff must show 1) that the defendant made a misrepresentation; 2) that that misrepresentation concerned a material existing fact; 3) that the plaintiff relied on the misrepresentation; and 4) that the reliance was to the plaintiff's detriment." *Lawson v. Harris Culinary Enterprises, LLC*, 83 So.3d 483, 492 (Ala. 2011) (citations omitted). Defendants' showing creates genuine issues of material fact as to whether they made a misrepresentation at all and whether Prince Hotel detrimentally relied on same. Indeed, if (as defendants' evidence shows) Prince Hotel knew the full amount of the bill was disputed and that defendants expected further discussion on the matter, then the April 20 check arguably was not a misrepresentation and Prince Hotel could not have relied on it to its detriment. Moreover, the conflicting evidence as to defendants' intent creates jury questions as to the availability of punitive damages, which Prince Hotel is expressly seeking for this claim. *See, e.g., Exxon Mobile Corp. v. Alabama Dep't of Conservation and Natural Resources*, 986 So.2d 1093, 1114 & n.18 (Ala. 2007) (Although "[o]rdinarily, intent is not an element of a fraud claim … [w]hen, as here, punitive damages are sought, fraud is statutorily defined to include intent").

(reciting elements).[17]  The second and third elements are both problematic here, at least in a summary judgment analysis.

As to intent, the law is quite clear that payment of an antecedent debt via worthless check gives rise to a viable claim under § 6-5-285 only if "the check was drawn with intent to defraud." *Smith*, 337 So.2d at 333 (citations and internal quotation marks omitted); *see generally United Handicapped Industries of America v. National Bank of Commerce*, 386 So.2d 437, 441 (Ala.Civ.App. 1980) (no violation of Worthless Check Act where plaintiffs "specify they unknowingly issued checks drawn upon insufficient funds," and lacked requisite intent). Alabama courts have resisted efforts to water down the intent requirement by mere proof that a defendant knew a check was worthless or later stopped payment.  See *Smith*, 337 So.2d at 333 ("Knowledge that checks are worthless does not necessarily amount to a fraudulent intent, if the checks are given for antecedent debts."); *In re Alexander*, 212 B.R. 993, 996 n.15 (Bankr. M.D. Ala. 1997) (same); *Langford*, 470 So.2d at 1183 (evidence that the defendant stopped payment of a check a week after its issuance "is insufficient to prove that at the time the checks were drawn … [the defendant] had the requisite intent to defraud").

To be sure, "a showing at trial that the check had been presented and that payment had been refused, either for insufficient funds or because the depository on which the check was drawn does not exist, is prima facie evidence of the intent to defraud." *Safety Guide*, 2008 WL 5045065, at *8 (citation omitted); *Lowery v. City of Boaz*, 393 So.2d 534, 538 (Ala.Crim.App. 1981) (for purposes of worthless check statute, "[f]raudulent intent is inferable where the check is given to obtain an extension of credit, relief from threatened legal action or to effectuate the ostensible payment of any due or past due debt or obligation even though the check is tendered as payment of an antecedent debt").  Under this line of reasoning, intent to defraud may properly be inferred here by evidence that Blake Marine and Zatezalo parlayed their presentation of a worthless check into the receipt of additional lodging and hospitality services from Prince Hotel.

---

[17] Unlike the common-law fraud/misrepresentation claim asserted by Prince Hotel as its first cause of action, the statutory claim under § 6-5-285 does not require proof of detrimental reliance.  See *Smith*, 337 So.2d at 333 ("If there is a showing of the requisite 'intent to defraud,' a plaintiff need not show, though he may desire to, that he relied on the representation to his detriment."); *Alexander*, 212 B.R. at 997 n.22 ("Proof of reliance is not essential in a worthless check action under Alabama law.") (citation omitted).

Nonetheless, even with the existence of *prima facie* evidence of intent to defraud by defendants, there is also contrary evidence in the summary judgment record.  In particular, defendants have categorically denied any intent to deceive Prince Hotel via the April 20 check and have stated that plaintiff was well aware that the bill remained contested and that further negotiation, adjustment and/or discussion would be necessary.  These conflicting factual inferences give rise to a triable question on the issue of intent.

Even more problematic for Prince Hotel is the third element, requiring proof that defendants knew at the time of drawing the check that said check would not be honored.  Plaintiff's summary judgment filings do not address this element at all, leaving the Court to guess how Prince Hotel maintains this element is satisfied on the existing record.  Of course, summary judgment cannot be granted on the basis of supposition, guesswork, or speculation.

The existence of genuine issues of material fact as to the § 6-5-285 cause of action precludes the granting of Prince Hotel's Rule 56 Motion on this claim.

**IV.    Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff's Motion for Summary Judgment (doc. 40) is **denied**;
2. Defendants' Motion for Summary Judgment (doc. 56) is **denied**;
3. The parties dueling Motions to Strike (docs. 46, 50) are both **denied**, except that Defendants' Motion to Strike (doc. 46) is **moot** insofar as it relates to exhibits not referenced or discussed in this Order, because such exhibits were not considered in resolving the cross-Motions for Summary Judgment; and
4. This action remains set for Final Pretrial Conference before the undersigned on **January 15, 2013** at **9:00 a.m.**, with bench trial to follow in **February 2013**.

DONE and ORDERED this 2nd day of October, 2012.

                                        s/ WILLIAM H. STEELE
                                        CHIEF UNITED STATES DISTRICT JUDGE